## WALKER *v.* RICHARDS.

If the party to whom goods are delivered, or for whose benefit a service is performed, incur thereby a debt, so that he is liable at all, then the undertaking of another, in aid of his liability and collateral to it, must be in writing to be binding, although the collateral undertaking may have been the principal inducement to the delivery of the goods or the performance of the service.

Where the whole credit is not given to the person who comes in to answer for another, the promise is collateral and within the statute of frauds, unless in writing.

A collateral promise, though required by the statute of frauds to be in writing, need not be declared upon as being so.

ASSUMPSIT, with three counts in the declaration, as follows:

"In a plea of the case, for that the defendant, at said Amherst, on the 21st day of August, 1853, in consideration that the plaintiff, at his request, would sell and deliver to one Jacob Davis, on credit, all such goods as the said Jacob Davis should wish to purchase of him while the said Jacob Davis was at work for the said defendant, promised the plaintiff to be accountable to him for the price of said goods; and the plaintiff avers that he did afterwards, to wit, at divers times from the said twenty-first day of August, 1853, until the thirtieth day of October, 1854, and while said Davis was at work for said defendant, sell to said Jacob Davis on credit sundry goods which said Davis wished to purchase of him, amounting to the sum of thirty-eight dollars and seventy-six cents; and the said Davis, though requested on the tenth day of May, 1856, at New-Boston, after said time of credit had expired, has not paid for said goods, of which the said defendant had notice; yet the defendant, though requested on the fifteenth day of May, 1856, at said New-Boston, has never accounted to the plaintiff, nor paid him for said goods, or any part thereof:

"Also, in a plea of the case, for that the defendant, at said Amherst, on the twenty-first day of August, 1853, in consideration that the plaintiff, at his request, would sell and deliver to one Jacob Davis all such goods as the said Jacob Davis should wish to purchase of him while the said Davis was at work for the said defendant, promised the plaintiff to be accountable to him for the price of said goods; and the plaintiff avers that, relying upon the said promise of the said defendant, he did afterwards, to wit, at divers times between the said twenty-first day of August, 1853, and the thirtieth day of October, 1854, and while the said Davis was at work for the said defendant, sell to said Davis sundry goods, such as said Davis wished to purchase of the said plaintiff, amounting to the sum of thirty-eight dollars and seventy-six cents; yet, though requested, has not paid the same, but refuses so to do:

"Also, in a plea of the case, for that the said defendant, at said Amherst, on the twenty-first day of August, 1853, in consideration that the plaintiff, at his request, would sell and deliver to one Jacob Davis all such goods as the said Jacob Davis should wish to purchase of him, while the said Davis was at work for the said defendant, promised the plaintiff that he would be responsible and would see him paid for the price of said goods; and the plaintiff avers that, relying upon the said promise of the said defendant, he did afterwards, to wit, at divers times between the said twenty-first day of August, 1853, and the thirtieth day of October, 1854, and while the said Davis was at work for the said defendant, sell and deliver to said Davis sundry goods, such as the said Davis wished to purchase of the said plaintiff, amounting to the sum of thirty-eight dollars and seventy-six cents; yet the defendant, though requested, has not paid for the said goods, but refuses so to do:"

To which the defendant filed a general demurrer, and it was agreed by the parties that if the demurrer be over-

Walker *v.* Richards.

ruled, the defendant should have leave to withdraw the demurrer and plead anew, without terms.

*David Steele*, for the defendant.

The plaintiff's claim, in all three of the counts, is substantially the same. He relies upon a promise of the defendant to pay for goods which he had sold to Davis at the defendant's request. Such promise is clearly within the statute of frauds, [Comp. Laws 459] and is void unless in writing. It is an undertaking of the defendant to pay the debt of Davis, to whom alone the credit was given, upon the plaintiff's own showing in the declaration. As a matter of fact, the goods for which the plaintiff seeks to recover were all charged to Davis upon the plaintiff's books, and not to the defendant.

In support of his views the defendant's counsel further cited and commented upon *Matson* v. *Wharam*, 2 D. & E. 80.; *Holmes* v. *Knight*, 10 N. H. 175, and *Greenleaf* v. *Burbank*, 13 N. H. 454, quoting the opinion of Chief Justice *Parker* in the last named case.

*Morrison & Stanley*, for the plaintiff.

The question for the consideration of the court is the sufficiency of the declaration, and this is to be determined from the record itself. The defendant demurs generally, and hence admits that the facts alleged are true. Bac. Abr., Pleas (N.) 3; Com. Dig., Pleading (2) 5; 1 East 634; 1 T. R. 334; Steph. on Pl. 161. Whether or not there may be a variance between the declaration and proof remains to be seen, but is quite immaterial to the question now before the court.

The second and third counts allege, in substance, that the plaintiff sold and delivered goods to one Davis at the request of the defendant, and on his promise to be responsible and to pay for the same. This is clearly sufficient in law. The promise was to pay the plaintiff for doing a

certain act, performed at the request of the defendant. It is immaterial whether that act was done for the benefit of Davis, or of the defendant, if the promise was not collateral to any liability of Davis to the plaintiff. It has in terms no reference to any such liability. For aught that appears to the contrary in the declaration, if Davis made any request, the plaintiff refused, whereupon the defendant made a request, with a promise to pay, upon which the plaintiff acted, and did so evidently upon the sole credit and responsibility of the defendant. The defendant's agreement, therefore, was clearly an original and not a collateral undertaking. Hence the promise does not come within the statute, and the declaration is unquestionably sufficient. *Jones* v. *Cooper*, Cowp. 227 ; *Newbury* v. *Cunningham*, Cowp. 228 ; *Tileston* v. *Nettleton*, 6 Pick. 509 ; *Doyle* v. *White*, 26 Maine 341 ; *Arbuckle* v. *Hawks*, 20 Vt. 538 ; *Antonio* v. *Clissey*, 3 Rich. (S. C.) 201 ; *Brown* v. *Curtiss*, 2 Comst. (N. Y.) 229 ; *Booker* v. *Tally*, 2 Humph. 308 ; *Rhodes* v. *Leeds*, 3 St. & P. (Ala.) 212; Roberts on Frauds 216 ; Brown on Stat. Frauds 193. On the same principle it has been held, that when one advances money to pay the debt of a third party, at the request of another, and on his promise to repay it, the liability of the party on whose request and promise it was made is original, and therefore not within the statute of frauds. *Pierce* v. *Blagram*, 30 E. L. & E. 510 ; *Proprietors of Upper Locks* v. *Abbott*, 14 N. H. 157. *Matson* v. *Wharam*, cited by the defendant, is clearly distinguishable from this case. There it appeared that credit was given to the person to whom the goods were furnished ; that he was made the debtor, and was applied to for payment ; and hence the promise of another to pay that debt ought to have been in writing. *Holmes* v. *Knights* is directly against the defendant. It was assumpsit upon a verbal promise to indemnify the plaintiff on account of his entering into a recognizance for the appearance of a

third person, at the request of the defendant, and the promise was held not to be within the statute. In that case Chief Justice *Parker* says in substance that if the third party might also be liable on an implied promise, from a request of his own, the defendant's promise might, notwithstanding, be an original undertaking; citing *Swan* v. *Nesmith*, 7 Pick. 220; *Town* v. *Grover*, 9 Pick. 306; and after stating that the defendant's promise might constitute an original liability, and that there might be an independent original liability on the part of the third party from a request of *his*, he further adds, that "if either was to be deemed collateral, the liability of the third party in such case would seem to be collateral to that of the defendant;" and in support of this refers to *Duval* v. *Trask*, 12 Mass. 154. Nor does *Greenleaf* v. *Burbank* apply. That was an action founded upon a verbal promise of the defendant to pay the note of a third party, and the promise was collateral, not only to the sale of the goods for the price of which the note was given, but to the note also. Hence there was no consideration for it, either moral or legal, and it was clearly within the statute.

FOWLER, J. The question principally discussed by counsel in this case has been whether the defendants promise to pay for the goods subsequently sold and delivered to Davis by the plaintiff, in accordance with the defendant's request, if not in writing, comes within the provisions of the second clause of the 9th section of chapter 180 of the Revised Statutes, [Comp. Laws 459] which are, that no action shall be brought to charge any person upon any special promise to answer for the debt, default or miscarriage of another person, unless such promise or agreement, or some memorandum or note thereof, is in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized.

This clause of our statute is but a substantial reënact-

ment of a portion of the fourth section of the original statute of frauds, passed in the twenty-ninth year of the reign of Charles II., which has been the subject of frequent consideration by the courts in England and this country, and the construction of which is now definitively settled.

A distinction was at first taken between a promise to pay for goods sold and delivered to another, made before the delivery of the goods, and a similar promise made after their delivery. The former was held to be an original undertaking, and so not within the statute; but the latter a collateral undertaking, and therefore within the statute. *Mawbury* v. *Cunningham*, sittings after Hilary term, 1773, cited in *Jones* v. *Cooper*, Cowper 228, and in *Matson* v. *Wharam*, 2 D. & E. 81. But this distinction was expressly overruled in *Jones* v. *Cooper* and *Matson* v. *Wharam*, above cited, and also in *Anderson* v. *Hayman*, 1 H. Black. 120, and *Birkmyr* v. *Darnell*, 1 Salk. 27, and 2 Ld. Raym. 1085; and the almost uniform rule of construction has since been, that if the person for whose use the goods are furnished be liable at all, any promise by a third person, whether made before or after the delivery of the goods, although upon sufficient consideration, to pay the debt, must be in writing. *Forth* v. *Stanton*, 1 Wm's Saunders, 211, *a*, note.

If it appear that the credit was given to the defendant; that is, if the goods were really sold to him, though delivered to another, the statute is out of the case. But if the sale were made to the person for whose use the goods were delivered, so that he is liable at all, the defendant can only be holden by a promise in writing upon sufficient consideration, and in a special action of assumpsit. *Forth* v. *Stanton*, 1 Wm's Saunders 211, *a*, note, and authorities there cited.

The general current of all the more recent decisions is, that if the party to whom the goods are delivered, or for

whose benefit a service is performed, incurs thereby a debt, so that he is liable in any way for it, then the undertaking of another, in aid of his liability and collateral to it, must be in writing, notwithstanding the collateral undertaking may have been in fact the principal inducement to the delivery of the goods or the performance of the service. In other words, if any credit is given to the party who receives the benefit, the undertaking of the other is collateral and voidable, unless in writing. *Holmes* v. *Knight*, 10 N. H. 175, and authorities; *Greenleaf* v. *Burbank*, 13 N. H. 454; see, also, notes to *Birkmyr* v. *Darnell*, 1 Smith's Leading Cases (4th Amer. Ed.) 316, and numerous authorities collected on page 325; *Tileston* v. *Nettleton*, 6 Pick. 509, and authorities cited in note, page 511, of second edition; *Swan* v. *Nesmith*, 7 Pick. 220.

In *Rogers* v. *Kneeland*, 13 Wend. 114, 131, Chancellor *Walworth* says: "The object of the statute was to reach every case of suretyship, whether the agreement of the surety was collateral to a previous promise or liability on the part of the principal debtor, or only collateral to a promise or agreement made at the same time with the promise of the surety, to indemnify against a future default or liability of such principal debtor. When the whole credit is not given to the person who comes in to answer for another, the promise is collateral; and in all such cases there must be an agreement in writing, containing a sufficient consideration to support it; in other words, it is a case within the statute."

In *Cahill* v. *Bigelow*, 18 Pick. 369, it appeared from the disclosure of the trustee that the principal defendant had kept a boarding-house for the workmen employed in the trustee's manufactory, and that he became debtor to the principal defendant for their board; that when the principal defendant began to keep the boarding-house it was verbally agreed between the trustee, principal defendant and several persons named, who subsequently furnished

the principal defendant with provisions and other supplies, that the supplies should be delivered and charged to the principal defendant, and that at the end of each quarter the trustee would see that the persons who furnished them were paid therefor; that the supplies were so delivered and charged to the principal defendant, and the trustee paid for them for a considerable length of time, and considered himself bound to continue so to do, inasmuch as those who furnished them would not have done it but for his engagement to see them paid.

In delivering the opinion of the court, Chief Justice *Shaw* says: "The court are all of opinion that the undertaking of Hatch, the trustee, to pay for supplies furnished to Mrs. Bigelow, the principal defendant, was collateral and conditional—to pay if she did not—to pay her debt; and so was within the statute of frauds. Had any one of those persons brought an action against Hatch, and he had chosen to rely on the statute of frauds, it would have been a good defence, there being no note or memorandum in writing. We consider this point well settled by authorities. The test is this: when the promise is made before the credit is given, to decide whether one promising is an original debtor or guarantor: namely, whether credit was given to the person receiving the goods. If it was, then such promisor is a guarantor only, undertaking to pay another's debt; if no credit was given to the person receiving the goods, then the promisor is himself debtor for goods sold to him, and delivered to another person by his order. His promise is not to pay the debt of another; and a parol promise, being made upon a good consideration, is a good contract at common law, and binds him, and is not within the statute of frauds."

It seems quite impossible to distinguish the circumstances of the present case, as stated in all the counts of the declaration, from those of *Cahill* v. *Bigelow*. Here, as there, the sale was to the party to whom the goods were

delivered; the credit was to that party, and consequently the undertaking of the defendant here, as of the trustee there, was collateral and conditional—to pay, if the party to whom the sale was made and the credit given did not— to pay the debt of such party; and so, upon the whole current of modern authority, clearly within the statute of frauds, and no action can be maintained upon it, unless it were in writing.

But this question does not arise upon the demurrer. The whole effect of that is to deny the sufficiency of the plaintiff's declaration. If that contain everything necessary to be alleged to enable him to maintain an action, it is good upon demurrer, whether or not he have any evidence by which to sustain it upon trial.

The general rule undoubtedly is, that a plaintiff must set out in his declaration every thing essential to his right of action, since he can recover only *secundum allegata et probata*, and can legally prove no material fact which the declaration does not allege. Gould's Pleading, ch. 4, sec. 7. Under this rule it would clearly be necessary that, where a plaintiff could recover only by proving an agreement in writing, he should, in his declaration, aver such written agreement.

But this distinction was early established in England in relation to statute requisitions; that where an act of Parliament makes writing necessary to a common law matter where it was not before necessary, in declaring upon that matter it is unnecessary to allege it to have been in writing, although it must be so proved in evidence; but where the matter is created by an act of Parliament, and required to be in writing to be available for sustaining an action, it must be pleaded, with all the circumstances required by the act to render it actionable. Hence a collateral promise, which is required by the statute of frauds to be in writing, but was good at common law without writing, need not be declared upon as having been in

writing. This distinction, although it constitutes an exception to the general rules of pleading, has been too long recognized and is sanctioned by too many precedents and decisions, to be overthrown. *Anon.*, 2 Salk. 519, per *Holt*, Chief Justice; *Duppa* v. *Mayo*, 1 Wm's Saunders 276, *a*, n. 1 and 2; 2 Ch. Pl. 86, n. (f.,) Saund. Pl. & Ev. 546.

The demurrer must, therefore, be overruled, with leave to the defendant, according to the provisions of the case, to withdraw it and plead anew without terms.

*Demurrer overruled.*