Merrimack, {
June, 1896. {

## JUDGE OF PROBATE v. SULLOWAY & a.

The liability of the sureties on an executor's bond is coextensive with that of the principal.

Where by a decree of the probate court the executor is charged with the amount of his indebtedness to the testator, the sureties are liable therefor; and their liability is not affected by the fact that the executor was insolvent at the date of his appointment and unable to discharge his indebtedness to the estate at any time thereafter.

DEBT, against the defendants as sureties on the bond of Daniel Barnard, executor of the will of Eliza Bean. Facts found by the court.

At the time of his appointment as executor, Daniel Barnard was indebted to the estate upon two promissory notes, payable to Eliza Bean. December 28, 1891, he filed with the judge of probate his account as executor, wherein he charged himself with the amount of his indebtedness to the estate. He died January 10, 1892, before the account was settled. January 26, 1892, James E. Barnard was appointed administrator of the estate of Daniel, and on February 9, 1892, settled the account filed by Daniel. Upon that settlement, it was decreed by the probate court that there was in the hands of Daniel at the time of his decease, to be accounted for by his administrator, the sum of $17,751.70, in which was included $565.42, the amount of Daniel's own indebtedness to the estate.

James E. Barnard was also appointed administrator de bonis non of the estate of Eliza Bean, and upon settlement of his account, March 23, 1892, he was by decree of the court charged with the full amount ($17,751.70) found to be in Daniel's hands at his decease and with sundry other items, amounting in all to $17,894.97. Of this amount, Sarah E. Elliott, as administratrix of the estate of Lydia Elliott, was by law entitled to the sum of $5,447.48. James E. never in fact received the money due from Daniel to the estate of Bean. He paid to Elliott the sum of $4,867.93, and turned over to her as cash the claim against Daniel's estate upon the notes, then amounting to $579.55; and she gave him a receipt for $5,447.48 in full settlement of her interest in the Bean estate. Neither intended to release the sureties on Daniel's bond. Daniel was insolvent when appointed executor, and so continued until his death. Elliott presented the claim to the commissioner on his estate, and it was allowed at $579.55. She has received a dividend of thirty per cent and may receive another. If the plaintiff is entitled to judgment, it is to be for $405.48 and interest from July 26, 1892.

*Sargent & Hollis*, for the plaintiff.

*Edward B. S. Sanborn* and *Frank N. Parsons*, for the defendants. The main question in this case is whether the sureties on an administration bond of an administrator insolvent at the time when appointed, and who so continues during his administration, are guarantors for the payment of any debt due from the administrator at the time of his appointment, and liable therefor on the administration bond. The question is one of great importance, which ought to be thoroughly considered before it is determined as the law of the state that the mere signing of the insolvent administrator's bond by solvent sureties is sufficient to create a valuable estate out of what was, a moment before, a worthless claim.

Our position is that Daniel Barnard was properly chargeable in his administration account with the full amount of his debt to the estate. It could not well be otherwise, because the decree determined what he owed the estate; but unless the sureties were guarantors of his personal debt, the decree did not necessarily determine the part of his debt for which they are responsible. The precise point has not, so far as we can find, been passed upon in this state; but the first part of the proposition — that the executor is chargeable with the amount of his personal debt to the estate — has been fixed by statute and several decisions, all of which leave open the question raised here.

The defendants did not become guarantors for the payment of the executor's then existing debt to the estate; they did engage that he would not embezzle the property of the estate and for due care in the discharge of his official duty. For what assets is the executor himself liable? For such only as can by due diligence be turned into money. If in the settlement of Eliza Bean's estate, Daniel Barnard had found no way to collect the other notes payable to her, he would not have been charged with their amount, nor his sureties held liable for his failure to collect them. The same rule must apply to his own notes. The statute makes such a debt assets to be accounted for as other debts, but does not make such assets money. "A surety is liable for the executor's debt, only to the same extent as for the debts of third parties." *Spurlock* v. *Earles*, 8 Bax. (Tenn.) 437. "All debts due to the estate, which by due diligence might have been collected, shall be accounted for in money." P. S., c. 189, s. 9. "A debt due from the administrator to the estate shall be assets and accounted for as other debts." *Ib.*, c. 189, s. 12.

If with due diligence collection could have been made, then the law demands money of the executor; but so far as the executor's debt to the estate is concerned, said debt shall be " accounted for as other debts." That is, if the administrator is solvent he must

account for the whole amount in money. If insolvent when appointed administrator, the estate must be satisfied with its dividend, exactly as if it were the debt of a stranger, unless before the close of his administration he becomes solvent and "due diligence" exacts the money.

"Sureties on an administrator's bond are not liable for the debt of the administrator to the estate which he has failed to charge himself with and account for, where the administrator was insolvent at the time of his appointment, except in the amount which could have been saved to the estate after his appointment, by the exercise of due diligence." *State* v. *Gregory*, 119 Ind. 503. "Sureties upon an administration bond do not guarantee the solvency of their principal and hence are not responsible for a debt due by an insolvent executor or administrator to the estate; yet if he is able to pay and will not, they will be liable for his breach of duty in not discharging the obligation." 7 Am. & Eng. Enc. Law 218. "If the executor or administrator is solvent his sureties are liable for a debt due by him personally to the estate." 24 Am. & Eng. Enc. Law 868. See in addition, *Harker* v. *Irick*, 2 Stockt. Ch. 269; *Gottsberger* v. *Smith*, 5 Duer 566; *Piper's Estate*, 15 Pa. St. 533; *Baucus* v. *Barr*, 45 Hun 582,— 107 N. Y. 624; *Lyon* v. *Osgood*, 58 Vt. 707.

Daniel Barnard owed Eliza Bean when she died, and when he was appointed her executor, and when he died. He was insolvent when she died, when he was appointed, when he died, and, inferentially, insolvent when he gave her his notes. About thirty per cent of the debt has been received and paid to the plaintiff in this suit, which per cent has been paid to all his creditors alike. No "due diligence" could have collected any more of Daniel Barnard's estate unless "due diligence" required somebody to take from his other creditors the $405.48 demanded in this suit. The plaintiff asks the court to charge the sureties upon Daniel Barnard's bond for this sum, which the sureties never undertook to guarantee, their only obligation being that Daniel Barnard was competent to administer and would do so honestly.

CLARK, J. One of the principal questions is whether the sureties upon an executor's bond are liable for the payment of his personal debt to the testator.

Except as against creditors, an executor's indebtedness to the testator was by the common law released or extinguished. 2 Bl. Com. 512; Bac. Abr., Executors (A), 10; 2 Will. Ex. 1310, and cases cited; Went. Ex. (1st Am. ed.) 73–76; Co. Lit. 264 b, note 1; *Gardner* v. *Miller*, 19 Johns. 188; *Marvin* v. *Stone*, 2 Cow. 781, 809.

The purpose of section 7 of the act of July 2, 1822, was to abolish this rule.    *Norris* v. *Towle*, 54 N. H. 290, 294.    It provided that " all debts due from the executor or administrator to the testator or intestate shall be assets in his hands for which he shall account in the same way and manner as for a debt against any other person; and the judge of probate is hereby authorized to ascertain and liquidate such debt and charge the executor or administrator therewith."    Laws 1822, *c.* 31, *s.* 7. In the revision of 1842 it was condensed without alteration of the sense (R. S., *c.* 159, *s.* 9), and has ever since stood upon the statute book in exactly the same language.    P. S., *c.* 189, *s.* 12. The statute affords no ground for the inference that the debt is not to be treated as assets unless the executor is solvent.    The inference, if any, is quite the other way.    No legal fiction is involved.    It is pure matter of fact.    The executor has, as matter of fact, received from the testator so much money or money's worth, and is answerable for it.    It is money in his hands precisely as if a debtor had paid him so much money.

A like statute to the same effect and for the same purpose was enacted in New York.    *Soverhill* v. *Suydam*, 59 N. Y. 140, 142 ; *Baucus* v. *Stover*, 89 N. Y. 1 (where the statute is recited); *Matter of Consalus*, 95 N. Y. 340.    The statute was passed in consequence of the decisions of the courts in accordance with the common law.    *Thomas* v. *Thompson*, 2 Johns. 471 ; *Gardner* v. *Miller*, 19 Johns. 188 ; *Marvin* v. *Stone*, 2 Cow. 781 (1824).

Without any special statute, the same result was reached in Massachusetts, Maine, Connecticut, and Vermont, either under general statutes providing for the settlement of estates and the distribution of property not devised or bequeathed (*Winship* v. *Bass*, 12 Mass. 198; *Probate Court* v. *Merriam*, 8 Vt. 234), or on the ground that the common-law doctrine had never been adopted.    *Bacon* v. *Fairmain*, 6 Conn. 121, 129 ; *Williams* v. *Morehouse*, 9 Conn. 470, 474; *Davenport* v. *Richards*, 16 Conn. 310; *Potter* v. *Titcomb*, 7 Me. 302.

An executor or administrator is required by the statute to give a bond with sufficient sureties, on condition: (1) To return to the judge a true and perfect inventory of the estate of the deceased upon oath within three months from the date of the bond; (2) to administer the estate according to law ; (3) to render an account within a year ; and (4) to pay and deliver the rest and residue of the estate which shall be found remaining upon the account to such person or persons as the judge, by his decree according to law, shall limit and appoint.    P. S., *c.* 188, *s.* 12.

The liability of the sureties is coextensive with that of the principal.    *Wattles* v. *Hyde*, 9 Conn. 10, 15.    They are his privies.

By whatever decree of the probate court their principal is bound, they are bound. *Stovall* v. *Banks,* 10 Wall. 583; *Casoni* v. *Jerome,* 58 N. Y. 315; *Gerould* v. *Wilson,* 81 N. Y. 573; *Scofield* v. *Churchill,* 72 N. Y. 565; *Deobold* v. *Oppermann,* 111 N. Y. 531; *Choate* v. *Arrington,* 116 Mass. 552, 556; *Towle* v. *Towle,* 46 N. H. 431, 434. This is because they have, in legal effect, so stipulated in the bond. It necessarily follows that they are bound to whatever in law their principal, the executor, is bound. That he is bound to account for his indebtedness to the testator is not questioned, nor is it claimed that he is relieved from this obligation by the fact that he is insolvent or unable to pay. The judge of probate cannot release him from his obligation on the mere ground that he is unable to perform it. He has authority to determine whether the indebtedness exists and the extent of it (P. S., *c.* 189, *s.* 12), and there his authority ends. If the debt is admitted or found, the judge of probate has no choice — he must charge it to the executor as a part of the assets belonging to the estate. This duty is imperative. He cannot authorize the executor to compromise with himself, nor has he any authority to negotiate and compromise with the executor. *Norris* v. *Towle,* 54 N. H. 290. It is wise that such should be the law. If it were otherwise, it would open a wide door to fraud. "On technical grounds, as well as on considerations of policy, an administrator is not permitted to show that he could not collect a debt due from himself." *Shaw,* C. J., in *Kinney* v. *Ensign,* 18 Pick. 232, 236.

*Stevens* v. *Gaylord,* 11 Mass. 256, decided in 1814, is the earliest case on the subject. The court there say (*pp.* 269, 270): "As soon as the debtor is appointed administrator, if he acknowledges the debt, he has actually received so much money, and is answerable for it. This is the result with respect to an executor (1 Salk. 306); and the same reason applies to an administrator; as the same hand is to receive and pay, and there is no ceremony to be performed in paying the debt, and no mode of doing it, but by considering the money to be now in the hands of the party, in his character of administrator. . . . The consequence is, that he and his sureties in the administration bond are liable for the amount of such a debt, in like manner as if he had received it from any other debtor of the deceased. It may be thought injurious to the sureties of the debtor that they should thus be made liable for a debt due from the administrator. To this it may be answered, that, if such be the legal effect of the bond, it is presumed to have been contemplated by the parties at the time of executing it; and they cannot afterwards complain of the natural and legal consequence of their own voluntary act."

Such is the settled law in Massachusetts. *Winship* v. *Bass,* 12 Mass. 198 (1815); *Kinney* v. *Ensign,* 18 Pick. 232 (1836); *Ips-*

*wich Co.* v. *Story,* 5 Met. 310 (1842); *Sigourney* v. *Wetherell,* 6 Met. 553 (1842);˙ *Benchley* v. *Chapin,* 10 Cush. 173 (1852); *Mattoon* v. *Cowing,* 13 Gray 387 (1859); *Leland* v. *Felton,* 1 Allen 531 (1861).

"The surety is liable for whatever is properly chargeable to his principal in the official capacity on account of which the bond was given." *Choate* v. *Arrington,* 116 Mass. 552, 556. There is in law or logic no escape from this conclusion. Such, in substance, was the decision in *Judge of Probate* v. *Claggett,* 36 N. H. 381. It is no hardship on the surety. He executes the bond for the purpose — the sole purpose — of securing to those interested in the estate whatever by law belongs to them, — whatever money or property is in law a part of the assets.

In a proper case he might, no doubt, upon taking the appropriate steps, be relieved; as if, *e. g.,* he executed the bond in ignorance of the executor's insolvency, the executor might on his application be removed and another appointed; or he might be discharged under P. S., *c.* 199, *s.* 3, and a new bond required. See *Benchley* v. *Chapin,* 10 Cush. 173, 176. If a responsible party was bound with the executor for the debt, either as joint principal or as surety, equity would compel him to pay on the application of the surety on the bond.

In *Wheeler* v. *Emerson,* 44 N. H. 182, 188, it was held that where by a decree of the probate court the executor is charged with the amount of his indebtedness to the testator, the surety is liable. It is said (*p.* 188): "By statute, a debt due the intestate from the administrator is assets in his hands, and must be accounted for, as other debts, and the decree of the probate court charges the principal debtor with the amount of such debts, and we must presume that he was rightfully charged. Under such circumstances the sureties would be held." It was accordingly held that the trustee could not be charged for collaterals which he held for his security against his liability for the executor or administrator.

The decision in that case governs the present one. The executor here has been charged with his indebtedness to the testatrix by decree of the judge of probate. The liability of the surety cannot depend on the question whether he is secured against loss. The decree of the probate court charging Daniel Barnard, as executor, with the amount of his debt is conclusive until reversed upon appeal, and cannot be attacked collaterally.

In *Lyon* v. *Osgood,* 58 Vt. 707, the executor's indebtedness to the testator was $9,508.82, and all the other assets were only $427. In a bill in equity brought by a surety to restrain an action against him on the bond, the court held that he was liable as surety for only such part of the debt as the executor at the time he was appointed or afterward was able to pay. Among

other things the court say (*pp.* 714, 715): "If, at the time the surety assumes responsibility, the executor is able to pay his debt to the estate, or afterwards, during the settlement of the estate, he becomes able to pay it, the surety is responsible for it as assets. The executor's failure to account for his debt when he has the power and means to pay it, is a gross violation of his duty. It cannot be held to be a breach of trust for the executor not to do what is beyond his power and control to perform when free from laches. . . . In the absence of laches, we think the surety is liable upon his bond for the executor's debt only to the extent of the executor's ability to pay it." That is to say, the surety is liable in those cases only where no surety is needed.

In *Harker* v. *Irick*, 2 Stockt. Ch. 269, 271, 272, the court say: "He [the surety] is only bound for the faithful performance of his duties as administrator. It could be no breach of trust or delinquency in duty for the administrator not to do what is beyond his power and control to perform. If under such circumstances the administrator should, in the settlement of his accounts with the court, charge himself with the debt, and the accounts should be passed in such a shape as to bind the surety for the debt, the surety would be relieved upon application to the proper tribunal from such responsibility. It would be a fraud on the surety to exact the debt from him, whether the administrator did or did not by his mode of accounting contemplate a fraud. But if, at the time the surety assumes his responsibility, the administrator owes the estate and is solvent and able to pay, the amount of the debt will be considered, in law and equity, as so much money in his hands as administrator at the time, and consequently the surety will be responsible for it. It is the duty of the administrator to collect the debts of the estate without delay; and certainly any delay which places the debt he himself owes the estate in jeopardy and results in its loss, is a gross violation of his duty as administrator." In other words, in New Jersey as in Vermont, when the executor is solvent and able to pay and no surety is needed, the surety is responsible for his debt; but when the executor is unable to pay and a surety's liability would be valuable, the surety is not liable.

The defendants, as sureties of Daniel Barnard, are concluded by the decree made on the settlement of his account. They are privies to that decree. *Heard* v. *Lodge*, 20 Pick. 53, 58, and cases before cited; *Towle* v. *Towle*, 46 N. H. 431, 434. To the decree made on settlement of James E. Barnard's account, as administrator *de bonis non* of Eliza Bean's estate, they are not privies but mere strangers. They are not bound by it, and inasmuch as they are not, neither is James E. Barnard bound by it as against them. *Mahagan* v. *Mead*, 63 N. H. 130, 132; *Parker* v. *Moore*, 59 N. H. 454, 458; *Hale* v. *Woods*, 9 N. H. 103, 106.

Though the legal interest in the sum due is in James E. Barnard, the equitable and beneficial interest is in Sarah E. Elliott. If the money should come to the hands of Barnard, he would be bound to pay over the same exact sum to her. Under these circumstances, no objection is perceived to an amendment naming her as the party in interest and to the issue of an execution for her use. P. S., *c.* 199, *ss.* 5–8. The sum due to her is admitted, and in such case, a decree of the judge of probate that the amount be paid is not necessary to a suit on the bond. *Gookin* v. *Hoit,* 3 N. H. 392; *Judge of Probate* v. *Briggs,* 5 N. H. 66, 69, 70; *Judge of Probate* v. *Emery,* 6 N. H. 141; *Judge of Probate* v. *Locke,* 6 N. H. 396; *Judge of Probate* v. *Adams,* 49 N. H. 150.

*Case discharged.*

BLODGETT and PARSONS, JJ., did not sit; CHASE, J., dissented: the others concurred.