## UNITED STATES FIDELITY & GUARANTY CO. v. VICARS.

(Circuit Court of Appeals, Ninth Circuit. January 18, 1926.)

No. 4620.

1. **Corporations** ⚖=>559(6)—Appointment of receiver for corporation held not to prevent corporation from suing or being sued.

Under Rev. Laws Hawaii 1925, § 3487, providing for appointment of receiver for insolvent corporation, appointment of receiver did not prevent corporation from suing or being sued, in absence of injunction or restraining order.

2. **Corporations** ⚖=>560(10)—Receiver of corporation held proper, but not necessary, party to action against corporation.

Where appointment of receiver for corporation did not prevent corporation from suing or being sued under Rev. Laws Hawaii 1925, § 3487, receiver, though proper party, was not necessary party, to proceeding against corporation as executor.

3. **Courts** ⚖=>406(1)—Finding by Supreme Court of Hawaii, sustained by evidence, is conclusive on Circuit Court of Appeals.

Finding by Supreme Court of Hawaii, sustained by evidence, is conclusive on appeal to Circuit Court of Appeals.

4. **Appeal and error** ⚖=>185(1)—Jury ⚖=>28(1)—Surety on executor's bond, appearing and participating in proceedings, waived right to jury trial, and objection to jurisdiction made in Circuit Court of Appeals was too late.

Where surety on executor's bond appeared in probate court, and had petition amended to include surety in citation, and thereafter participated in proceedings, it waived jury trial, and its objection that court had no jurisdiction to render judgment against it, raised for first time in Circuit Court of Appeals, was too late.

5. **Courts** ⚖=>405(3)—Construction of Hawaiian statute by Supreme Court of Hawaii will not be disturbed by Circuit Court of Appeals, unless clearly wrong.

Construction of Rev. Laws Hawaii 1925, § 2509, providing for appeals from circuit judges in chambers, by Supreme Court of Hawaii, and practice adopted thereunder, should not be disturbed by Circuit Court of Appeals, unless clearly wrong.

6. **Executors and administrators** ⚖=>528(5)—Surety held liable for executor's debts to estate, due prior to appointment of receiver for executor.

Where corporate executor, up to time of appointment of receiver for it, was able to pay note due estate, surety was liable for notes due prior to appointment of receiver, under common law as in force in Hawaii.

7. **Appeal and error** ⚖=>854(2)—Error held not assignable to reasoning of court's opinion.

Error held not assignable to reasoning of court's opinion.

8. **Executors and administrators** ⚖=>537(10)—On issue of corporate executor's solvency, court properly accepted subscriptions to executor's stock at face value.

On issue of corporate executor's solvency, for purpose of determining whether surety was liable for executor's debts to estate, held, that court properly accepted unpaid subscriptions to executor's stock at their face value, notwithstanding evidence that they were worth about 40 per cent. of such value.

Appeal from the Supreme Court for the Territory of Hawaii.

In the matter of the estate of Manuel Branco, deceased. From a decree of the Supreme Court of Hawaii, modifying a decree in favor of George H. Vicars, administrator de bonis non of the estate of Manuel Branco, deceased, and another, entered on exceptions to executor's final accounting, the United States Fidelity & Guaranty Company, surety on the executor's bond, appeals. Affirmed.

The appellant was the surety on the executor's bond filed September 1, 1921, by the Security Trust Company, Limited, as the executor of the last will and testament of Manuel Branco, deceased. The executor was indebted to the decedent in the sum of $82,000 on promissory notes, all of which were payable on demand, except a $7,000 note which was due March 3, 1922. In the inventory of the assets of the decedent the executor included the notes at their face value, and attached to the inventory was the verification of an officer of the executor, affirming the truth of the valuation of each item therein. On April 19, 1922, the executor filed its final account, and 10 days later filed an inventory of all remaining assets of the estate, in which were included its unpaid notes above mentioned. On June 16, 1922, at the instance of the testator's widow, the

said Security Trust Company, Limited, was removed as executor, and administrators de bonis non were appointed in its place.

On March 15, 1923, the widow filed exceptions to the executor's final account, in which she prayed that the executor be surcharged with the promissory notes and accrued interest. The executor in its answer admitted the indebtedness, but alleged its insolvency and inability to pay at the time when it was appointed and ever since. The circuit court sitting in probate, by its decision, held that the executor, at the time of its appointment as such and since, was solvent and able to pay its notes to the estate, and that its indebtedness became realized assets in its hands, and the court ordered that the executor pay forthwith to the administrator de bonis non all money in its hands, in default of which the surety was liable on the executor's bond. From that judgment, entered July 7, 1923, the surety and the administrator de bonis non took their appeals to the Supreme Court of the Territory of Hawaii.

The majority of that court, on the appeal, held that, where a debtor of the testator is appointed executor of the latter's will and testament, the debt which he owed the decedent is to be treated as realized assets in accordance with the common-law rule and regarded the same as debts due from other sources, that an executor is bound to exercise such diligence in the collection of debts due the estate of his decedent as would be exercised by an ordinarily prudent man in his own business affairs, and that when the executor is also a debtor it is his duty to pay his debt to the estate, without regard to his inability to pay his other debts, even if such payment might force him to suspend his business, and that the surety is liable to the extent of his principal's ability to pay such indebtedness. The court also found that the executor could have paid this particular debt, and held that, when part of the executor's debt to a decedent is not yet due, and before its maturity a receiver is appointed of the executor's property, the surety is not liable for the executor's failure to pay such undue debt prior to its maturity, and held that the surety was responsible for all of the notes, except the $7,000 note, which fell due after the receiver's appointment.

Robertson & Castle, of Honolulu, Hawaii, and Horace W. B. Smith and P. R. Lund, both of San Francisco, Cal., for appellant.

W. H. Smith, of Hilo, Hawaii, for appellee.

Before GILBERT, RUDKIN, and McCAMANT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1, 2] The appellant contends that the decree of the circuit court, as modified by the Supreme Court, is wholly void, for the reason that prior to the date thereof the Security Trust Company had gone into the hands of a receiver, and the receiver was not a party to the proceedings; that the appointment of a receiver effects a dissolution of a corporation under the Hawaiin statutes (Rev. Laws 1925, § 3487), which empower the treasurer of the territory, on becoming satisfied that a corporation has become insolvent or that its capital has become impaired, to apply to a court of competent jurisdiction for its winding up, and the appointment of a receiver to take possession of its records, books, and assets, collect all debts due it, and sell all its property under the direction of the court, and make final disposition of the assets. As declaring the effect of such statutes, the appellant cites 8 A. L. R. 449, where it is said: "Where the effect of an appointment of a receiver for a corporation is to extinguish the existence of the corporation as a body corporate, except as a receiver may have the right to use the corporate name in actions at law or in equity necessary in winding up the affairs of the corporation, the effect of the appointment of the receiver is to abate actions against the corporation pending at the time of the appointment, and likewise to preclude the commencement of actions against the corporation."

But such is not, in general, the effect of the appointment of a receiver. In 8 A. L. R. 456, it is said: "The mere fact that a receiver is appointed for a corporation under the state insolvency laws, for the purpose of administering the assets of the corporation, or for the purpose of winding up its affairs, does not have the effect of precluding actions against the corporation, unless as a result of such proceeding the legal existence of the corporation is virtually extinguished, except as it may be represented by the receiver." And in 7 R. C. L. 718, it is said: "The appointment of a receiver to take and distribute among the creditors and stockholders all the property of a corporation may with sufficient accuracy be called, as it has been, a virtual dissolution of the corporation; but it does not extinguish its franchise, terminate its legal existence, or render it incapable of being sued at law or in equity."

The statutes of the territory of Hawaii so referred to are not substantially different from the federal statute providing for the appointment of receivers of national banks. As to that statute the Supreme Court has held that the appointment of a receiver by the Comptroller to wind up the affairs of a national bank does not work a dissolution of the corporation or affect suits pending against it, or prevent it suing or being sued. Bethel First National Bank v. Pahquioque Bank, 14 Wall. 383, 20 L. Ed. 840. The court there said: "Beyond doubt the appointment of a receiver supersedes the power of the directors to exercise the incidental powers necessary to carry on the business of banking, as the receiver is required to take possession of the books, records and assets of every description of the association; * * * but the corporate franchise of the association is not dissolved, and the association, as a legal entity continues to exist." The same was held in National Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693. The appellant cites Pendleton v. Russell, 144 U. S. 640, 12 S. Ct. 743, 36 L. Ed. 574, but in that case the corporation had ceased to have legal existence. It had been dissolved, and its franchises, rights, and privileges declared forfeited by a decree of the Supreme Court of New York. Said the court: "The judgment was therefore no more valid against a nonexisting corporation than it would have been if rendered for a like amount against a dead man."

In brief, it seems to be well settled that in order to show that a corporation in the hands of a receiver has no capacity to sue or be sued it must appear that some statutory provision expressly so declares or that an injunction or restraining order so provides in addition to the appointment of a receiver. Folger v. Columbian Ins. Co., 99 Mass. 267, 96 Am. Dec. 747; American Waterworks Co. v. Farmers' Loan Co., 20 Colo. 203, 37 P. 269, 25 L. R. A. 338, 46 Am. St. Rep. 285; Milwaukee Mut. F. Ins. Co. v. Sentinel Co., 81 Wis. 207, 51 N. W. 440, 15 L. R. A. 627; Leonard v. Hartzler, 90 Kan. 386, 133 P. 570, 50 L. R. A. (N. S.) 383. Doubtless the receiver would have been a proper party to the proceeding and upon its application it might have been admitted as a party, but it was not a necessary party. Denton v. Baker, 79 F. 189, 24 C. C. A. 476; Anglo-American Land M. & A. Co. v. Cheshire Prov. Inst. (C. C.) 124 F. 464; Continental Securities Co. v. Interborough R. T. Co. (C. C.) 165 F. 945, 965; Allen v. United States (C. C. A.) 285 F. 678.

[3] Error is assigned to the Supreme Court's finding that the Security Trust Company at the time of its appointment as executor, and up to the time of the appointment of the receiver, was fully able to pay its notes then due to the estate, and it is contended that in fact the executor at the time of its appointment could not pay its debts in the ordinary course of business and that at no time between that date and the appointment of the receiver did it have funds sufficient to pay said debt, nor would there have been sufficient funds to pay it had a liquidation of the executor's assets been made. There was evidence, however, to sustain the conclusion which the Supreme Court reached upon the question of the executor's ability to pay and we accept the finding as conclusive upon this appeal.

[4] It is contended that the decree rendered against the surety in the probate proceeding on a surcharge of the principal is void as to the surety, for the reason that it was without the jurisdiction of the probate court, that in Hawaii a circuit judge sitting in probate is controlled by the principles applicable to probate court jurisdiction and has common-law powers only, and that at common law a probate court was without power to cite a surety to appear or to render judgment against him on an accounting by an executor or administrator. To this it is to be said: Section 2248, par. 3, R. L. 1925, recognizes as among the jurisdictional powers of the circuit judges sitting in probate the power "to compel executors, administrators and guardians to perform their respective trusts and to account in all respects for the discharge of their official duties; to remove any executor, administrator or guardian; to determine the heirs at law of deceased persons and to decree the distribution of intestate estates." In Carter v. Gear, 16 Haw. 242, concerning the distinction between the powers of the circuit court and the powers of the circuit judge at chambers, it was said: "Whether the court of the judge at chambers is the same as the circuit court or a different court, it is a court, and it is a court of record."

In the Estate of Afong, 26 Haw. 337, the court said: "The jurisdiction and procedure of the courts and the judges at chambers is not all defined by statute. Much of it is covered by statute only in a very general way. * * * Much as to jurisdiction and procedure is governed by what may be considered Hawaiian common law—that has grown up without the aid of statute or has

been built upon statutes by inference and been recognized by bench and bar and has to some extent been assumed in the enactment of statutes." Referring to the decision in Hoare v. Allen, 13 Haw. 262, the court said that it "asserts that our courts of probate in the matter of the supervision of the estate of minors possess, except as modified by statute, all the powers which the courts of chancery in England originally possessed under the common law."

The appellant here conceded the jurisdiction of the court sitting in probate in the proceeding here in question, and if it had the right to a jury trial it waived it by appearing and asking leave to amend the petition, so as to include the appellant in the citation. There being no objection to the amendment, the motion was granted, and the appellant's counsel entered appearance for it as the surety on the bond, and the appellant as such surety actively participated in the proceedings, both in the circuit court and the Supreme Court of the territory, and now for the first time raises in this court the objection to the jurisdiction. The objection, if it ever had basis, comes too late.

[5] It is said that the Supreme Court erred in making a finding as to the financial condition of the Security Trust Company at the time of its appointment as executor and thereafter, and that in so doing the court erroneously considered the appeal a trial de novo. It is not denied that on appeal to the Supreme Court from the decree of a circuit judge sitting in equity the trial is de novo, but, says the appellant: "That rule does not apply to appeals from probate courts." No citation of Hawaiian decisions is made to the point in question. The statute (R. L. 1925, § 2509) providing for appeals from circuit judges at chambers makes no distinction between cases appealed from judges when sitting in probate and judges sitting on the equity side of the court. Section 1, R. L. 1925, adopts the common law of England as the common law of the territory, but makes an exception where the law is "fixed by Hawaiian judicial precedent or established by Hawaiian usage." In Re Estate of Kapukini, 14 Haw. 204, an appeal in a probate case, the Supreme Court said: "There is no statute or rule of court defining what shall constitute the record on appeal, but the proceedings in this court are in the nature of a trial de novo." The construction thus placed upon the statute and the practice thus adopted by the territorial court should not be disturbed by this court, unless clear error is shown. Ewa Plantation Co.

v. Wilder (C. C. A.) 289 F. 664, 670, and cases there cited.

[6] We think that the appellant was properly held liable for the payment of the notes which were due prior to the appointment of the receiver. By the common law as it was at the time of its adoption in Hawaii, an executor's debt to the estate was considered paid in cash at the date of his appointment as such officer, and he was held accountable therefor as for money actually received by him as executor, and this, even if he was insolvent and unable to pay; the theory being that, since an executor cannot sue himself or demand payment of himself, and he is under obligation to account for his own debt, the amount of the debt is deemed assets in his hands, and where he is thus chargeable with his personal debt his surety is held for the payment of it, even when the executor is insolvent, the condition of the bond being that the executor shall faithfully discharge the duties of his office. 11 R. C. L. 114; Judge of Probate v. Sulloway, 68 N. H. 511, 44 A. 720, 49 L. R. A. 347, 73 Am. St. Rep. 619; Bassett v. Fidelity & Deposit Co., 184 Mass. 210, 68 N. E. 205, 100 Am. St. Rep. 552; Arnold v. Arnold, 124 Ala. 550, 27 So. 465, 82 Am. St. Rep. 199; Lambrecht v. State, 57 Md. 240; McGaughey v. Jacoby, 54 Ohio St. 487, 44 N. E. 231.

In the United States the severity of this rule has been relaxed by statute and by decisions of the courts in many of the states, and the prevailing view seems to be that the surety is not liable if the executor was at the time of his appointment insolvent, and continued to be so throughout the entire time of his administration and unable to pay. 24 C. J. 1063. In the present case it is not necessary to determine which rule is applicable. The Supreme Court adopted the more liberal view, but found as a fact that the executor at the time of its appointment as such, and up to the time of the appointment of the receiver, was able to pay the principal of the notes then due and all interest thereon. Said the court: "According to the undisputed evidence, the executor did nothing towards satisfying its indebtedness to the estate. There is not a scintilla of evidence to the effect that it made any effort whatever to convert any of its available assets for the purpose of liquidating in whole or in part the claim of the estate against it. The receiver, under less favorable conditions, realized $93,348.42 from converted assets."

[7, 8] The appellant assigns error to the language of the opinion of the Supreme Court in which reference is made to the un-

paid balance of subscriptions to its stock which amounted to $100,000, as assets of the Security Trust Company and the failure of said company to make any effort to collect the same, which the court regarded as utter failure to exercise the diligence which the law required of it in satisfying its indebtedness. And the appellant points to the testimony of its treasurer, who placed the valuation on the unpaid subscription stocks at only $40,680. Aside from the fact that error is not assignable to the reasoning of the court's opinion, we are not convinced that the liability of the stockholders, which had been regularly listed as of the value of $100,-000 upon the statements of the Security Company's resources and liabilities in June and December, 1921, as sworn to by its secretary, should have been disregarded by the court, even in the face of testimony that its value was but $40,680. The court accepted that estimate of its value, and rightly, we think, regarded it as an asset that should have been used by the trust company toward payment of its debt to the estate.

We find no error. The decree is affirmed.